# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 21-1378V

|  |  |
|---|---|
| ELIZABETH FELLOWS,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: June 2, 2026 |

*Willliam Patrick Ronan, III, The Ronan Law Firm, Overland Park, KS, for Petitioner.*

*Austin Joel Egan, U.S. Department of Justice, Washington, DC, for Respondent.*

**RULING ON ENTITLEMENT**[1]

On May 20, 2021, Elizabeth Fellows filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine received on October 9, 2019. Petition at 1.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I find the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Respondent has contested Petitioner's entitlement to compensation (ECF No. 22), and the parties have now briefed the disputed issues (ECF Nos. 26, 28). For the reasons set forth below, I find that the evidence of record preponderantly establishes that Petitioner likely suffered from residual effects of her condition for more than six months, and that she has preponderantly satisfied the Table SIRVA and remaining statutory requirements. She is therefore entitled to compensation.

## I.    Relevant Factual History

### A.  Medical Records

Petitioner received the flu vaccine at issue in her right arm on October 9, 2019. Ex. 1 at 2-3. Two weeks later (October 22, 2019), Petitioner called her primary care provider ("PCP") stating that she had received a vaccine about two weeks prior, and her arm pain had not gone away but was instead increasing. Ex. 4 at 1. The vaccine was injected higher in her arm than normal, and it was "very painful" when the vaccine was administered. *Id*. Her PCP explained that this can happen if an injection is given in the wrong place, and the pain could persist for weeks or months. *Id*. She recommended cool compresses and over-the-counter medications. *Id*.

Less than a month later (November 13, 2019), Petitioner again called her PCP about lingering pain from vaccination. Ex. 4 at 2. She had tried heat, ice, and ibuprofen, but her arm was still "very sore." *Id*. Her PCP told her that the vaccine administrator may have given the vaccine in the wrong spot, and if they had hit her bone, that would take time to heal. *Id*. If Petitioner's shoulder was not any better in a few weeks, she should make an appointment. *Id*.

On December 3, 2019, Petitioner called her PCP, stating that her arm remained painful at the vaccination situs. Ex. 4 at 3. Petitioner reported waking with throbbing pain every night. She had tried Tylenol, heat, and cold compresses, and wondered if she should go to physical therapy ("PT"). Her PCP sent her a PT referral. *Id*. at 4. The next day (December 4, 2019), Petitioner went to her employer's medical center complaining of right arm pain from vaccination two months prior. Ex. 1 at 1.

Petitioner underwent a PT evaluation of her right shoulder on December 9, 2019. Ex. 7 at 8. She reported "significant discomfort" in her shoulder resulting from vaccination. *Id*. On examination, Petitioner exhibited mild stiffness in internal rotation and a 10-15% deficit in shoulder internal rotation and end-range flexion, as well as pain in external rotation. *Id*. Petitioner's right shoulder exhibited weakness, rated one out of five on the liftoff test (compared to five out of five on the left side). *Id*. The therapist showed Petitioner home exercises, and planned to see her "zero to three times as needed over the next 60 days." *Id*.

Ten months later (October 19, 2020), Petitioner underwent another PT evaluation of her right shoulder. Ex. 7 at 18. She explained that she was returning for "the same problem she had last year with right shoulder discomfort that occurred following a flu shot." *Id*. She was afraid to receive a flu vaccine this year out of fear of aggravating her shoulder. *Id*. Her shoulder symptoms were worse when reaching overhead, reaching into a cabinet, or twisting and rolling into certain positions in external rotation. *Id*. On examination, Petitioner exhibited mild end-range stiffness in external rotation with quick movements, as well as "significant weakness" of three out of five with external rotation testing (compared to five out of five on the left side). *Id*. Her lift-off test had improved significantly from when she was seen the previous year, now exhibiting strength rated four out of five. *Id*. The therapist planned to be available as needed to treat Petitioner through the end of 2020. *Id*.

Petitioner continued PT thereafter, attending a total of six sessions between October 19, 2020 and February 4, 2021. Ex. 7 at 11-28. At her final PT session, she continued to report substantial discomfort on cold days and when she did not stretch her arm adequately. *Id*. at 28. Overall, her shoulder had improved, but her pain persisted and she stated that "she understands she will need to keep working on home exercises to try to maintain the current function." *Id*.

### B.  Affidavits

Petitioner filed three affidavits in support of her claim. Exs. 8, 12, 13. She states that she felt immediate pain while the vaccine was being administered. Ex. 8 at ¶ 2. She told a nurse, who suggested ice and movement would help with the pain. *Id*. at ¶ 3.

At Petitioner's December 2019 PT evaluation, the therapist gave her a series of exercises, which she then did on her own. Ex. 8 at ¶ 4. From December 9, 2019 to March 2020, she went to community centers and did the recommended PT exercises. *Id*. at ¶ 5. In March of 2020, the community centers closed due to the COVID-19 Pandemic. *Id*. at ¶ 6. Petitioner then purchased equipment and continued to do her PT exercises at home. *Id*. at ¶¶ 6, 7.

Petitioner explains that the right shoulder pain she was experiencing when she returned to PT in October of 2020 "is not distinct from the pain that I had more immediately following the subject vaccination" and "is essentially the same shoulder pain that I experienced" at that time. Ex. 12 at ¶¶ 3, 4.

### II.     The Parties' Arguments

Petitioner asserts that the record supports a finding that the right shoulder pain for which she sought treatment in October 2020 was the same as the pain she experienced immediately after vaccination. Petitioner's Brief, filed Mar. 13, 2025, at *4 (ECF No. 26) ("Pet."). Petitioner emphasizes that the October 2020 PT record itself states that

Petitioner was returning for the *same problem* as her prior care. Pet. at *5. This is bolstered by her testimonial evidence. *Id*.

Petitioner states that her right shoulder pain and stiffness did not stop in December of 2019, as Respondent suggests. Pet. at *5. At her December 2019 PT evaluation, she continued to experience pain and significant discomfort with certain motions. *Id*. Petitioner explains that between February and October 2020, she went out in public on a limited basis due to her concerns about the Pandemic. *Id*. at *3.

Respondent argues that Petitioner has not satisfied the statutory requirement that a petitioner demonstrate residual effects of an injury for at least six months. Respondent's Brief, filed Apr. 30, 2025, at *4 (ECF No. 28) ("Resp."). Respondent emphasizes the ten-month gap in treatment between December 2019 and October 2020. Resp. at *4.

Although Petitioner attributes this treatment gap to the Pandemic, Respondent notes that she returned to PT in October 2020, which he characterizes as "the height of the pandemic, and two months before" COVID-19 vaccines became available – which Respondent suggests means that the Pandemic did not deter Petitioner from seeking care. Resp. at *4. Thus, Respondent infers that the pain Petitioner complained of in October of 2020 is "distinct from the pain more immediately following the subject vaccination." *Id*. If viewed in this respect, Respondent asserts that the last complaint of vaccine-related shoulder pain was two months after vaccination – insufficient to meet the severity requirement. *Id*. at *5.

### III.    Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id*.

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[3]  a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D).

"[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . .  does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

26, 2022) (finding severity requirement met where the petitioner sought care for four months, followed by fifteen-month gap); *Silvestri v. Sec'y of Health & Human Servs*., No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where petitioner did not seek additional treatment after the five-month mark.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

## IV.    Ruling on Entitlement

### A.  Severity Requirement

The record in its entirety supports the conclusion that Petitioner's right shoulder pain likely persisted for more than six months. Petitioner actively sought care for the first two months after the onset of her shoulder pain. At that time, she attended a PT evaluation where she learned how to do PT exercises at home on her own. Petitioner has testified that she did so, initially at community centers, and then at home with purchased equipment due to the Pandemic.

Importantly, Petitioner remained symptomatic at the December 2019 PT evaluation, reporting "significant discomfort." Ex. 7 at 8. She thereafter did not seek additional treatment for over ten months – but when she returned to PT in October 2020, she stated that she was returning for "the *same* problem" she had been experiencing the prior year. Ex. 7 at 18 (emphasis added). Thus, it is more likely that Petitioner's symptoms persisted, rather than abated, during the treatment gap. *See, e.g., Pistulka v. Sec'y of Health & Human Servs*., No. 21-1429V, 2025 WL 2115479, at *6-7. (Fed. Cl. Spec. Mstr. June 27, 2025) (noting it was a "close case," but finding the severity requirement met where a claimant sought treatment for injury for two months, followed by a four-month pause).

Many cases with this fact pattern – treatment showing residual effects for two months, followed by a lengthy gap – are *not* likely to be found to meet the severity requirement. For it is reasonable to infer that a person who stops seeking treatment for nearly a year does so because their condition has improved. But here, the arrival of the Pandemic in late-winter of 2020, coupled with the record proof of an unresolved injury pre and post-treatment gap, permit a finding that the shoulder issue had not yet resolved. *See Jin v. Sec'y of Health & Human Servs*., No. 21-0283V, 2025 WL 935142, at *7 (Fed. Cl. Spec. Mstr. Feb. 19, 2025) (finding severity requirement met where the claimant, who at the time remained symptomatic, paused seeking care for seven months at beginning of Pandemic).

The Pandemic, particularly during its early months in the first half of 2020, heavily impacted the ability of individuals to seek general medical care, and I take that into consideration that when warranted by the timing. I do take note of the fact that Petitioner

7

stopped seeking treatment approximately three months *before* the Pandemic was formally declared.[4] That she stopped seeking care prior to this point (and despite her early, more concerted efforts to treat her shoulder) speaks to the mildness of the SIRVA at issue. I would therefore expect damages to be on the low end in this case.

### B. Factual Findings Regarding QAI Criteria for Table SIRVA and Other Entitlement Requirements

Respondent states, and I agree, that Petitioner has preponderantly satisfied the Table and QAI requirements for a SIRVA. Respondent's Rule 4(c) Report, filed Sept. 6, 2023, at *4 (ECF No. 22).

Petitioner experienced the onset of shoulder pain within 48 hours of vaccination. Ex. 4 at 1. Her shoulder ROM was limited, her symptoms were limited to her shoulder, and the record does not contain preponderant evidence that she had a history of pain, inflammation, or dysfunction, or another condition, that would explain her post-vaccination symptoms. Ex. 7 at 8-28. Petitioner received a covered vaccine in the United States. Ex. 1 at 2-3. And she states that she has not filed a civil action, or received compensation in the form of an award or settlement, for her vaccine-related injury. Ex. 13. Thus, Petitioner is entitled to compensation.

### Conclusion

Based on my review of the record as a whole, I find that it is more likely than not that Petitioner experienced residual effects of her vaccine-related injury for more than six months. I also find that all SIRVA Table and QAI requirements are preponderantly met, as are all statutory requirements for entitlement. **Therefore, I find that Petitioner is entitled to compensation**.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[4] The World Health Organization declared COVID-19 a pandemic on March 11, 2020, and two days later a nationwide emergency was declared in the United States. Centers for Disease Control Museum COVID-19 Timeline, https://www.cdc.gov/museum/timeline/covid19.html (last visited June 2, 2026).